**872**

George W. CORNELL and W. Elder
Cornell, Jr., Plaintiffs,

v.

ADAMS ENGINEERING COMPANY,
Inc., a Florida corporation,
Defendant.

Civ. No. 6521-M.

United States District Court
S. D. Florida,
Miami Division.

July 19, 1957.

J. Matthews Neale, Washingon, D. C.,
R. D. Maxwell, Jr., L. L. Robinson, Mi-
ami, Fla., Strauch, Nolan & Neale, Wash-
ington, D. C., for plaintiff.

Blackwell, Walker & Gray, Miami,
Fla., Kenyon & Kenyon, New York City
(Clemen J. Ehrlich, Miami, Fla., Ralph
L. Chappell, New York City, of counsel),
for defendant.

LIEB, District Judge.

### Findings of Fact

1. This is an action for infringe-
ment of Cornell Patent 2,718,677 for a
Threshold and Door Sealing Construc-
tion.

2. Plaintiffs are citizens and resi-
dents of the State of Florida and are the
owners of the patent in suit, applied for
February 23, 1954, and issued to them on
September 27, 1955.

3. Defendant is a Florida corporation
having its principal place of business in
Miami, Florida.

4. Adams Engineering Company,
Inc., is a manufacturer of doors, sliding
doors, windows, aluminum furniture,
thresholds, extrusions and tubing and has
manufactured in the past and still manu-
factures the double lip hook-strip type
threshold hereinafter referred to and has
manufactured a vinyl insert type thresh-
old known as Defendant's Model A since
July, 1955, and a bumper type vinyl in-
sert threshold designated Defendant's
Model B since August, 1955.

5. Plaintiffs, doing business as the
Duraflex Company, publicly offered a
vinyl insert threshold of the type dis-
closed by Patent 2,718,677 in suit at the
February, 1954, Miami Industrial Expo-
sition. As far as the evidence in this
case discloses, no one offered commercial-
ly a vinyl insert type threshold of the
type disclosed by the patent in suit or
like Defendant's Model A and Model B
thresholds or similar positive sealing
thresholds prior to February, 1954.

6. George Cornell, owner of Patent
2,718,677 in suit, being cognizant of the
difficulties and disadvantages of the com-
monly used prior existing threshold
structures, departed from the concepts
generally followed commercially in the
art, namely the use of the "hook-strip"
devices providing only a baffle type of
seal, by utilizing a deformable, resilient,
positive sealing strip in place of the hook-
strip and mounting it in a rigid support
strip that was intended to be permanent-
ly and quickly installed by the mechanic
or the homeowner himself.

7. It is claimed that driving rains and
sand and insects that could enter through
the passages provided by the "hook-
strip" type threshold are effectively pre-

vented from passage past the door or like closure by such a positive seal.

8. The Cornell structure contemplates a threshold construction or sealing assembly which can be readily mounted in a door or like opening to provide a positive sealing contact throughout the length of the space between the closure opening and the closure member. As disclosed in the patent, the assembly comprises either a rigid support strip, main deformable and resilient sealing strip removably secured to the support strip for sealing cooperation with the opposed closure edge, and resilient and deformable underseal strips for sealing cooperation with the opposed surface of the closure opening outwardly beyond laterally spaced closure opening abutment surfaces; or a rigid support strip having laterally spaced abutment surfaces for engaging the opposed surface of the closure opening and a main resilient and deformable sealing strip for sealing cooperation with the adjacent edge of the closure member. Cornell proposed a rigid support strip of aluminum having laterally spaced abutment surfaces for contacting the surfaces of the closure opening defining walls, longitudinally extending reinforcing rib structure, longitudinally extending groove means in the face opposite the abutment surfaces removably to receive the resilient and deformable sealing strip, and a highly flexible resilient and deformable sealing strip, preferably of vinyl plastic, provided with securing means adapting the sealing strip for secure but removable attachment to the support strip. As a preferred but optional feature, Cornell proposed longitudinally extending seal securing grooves along the opposite under edges of the support strip and under edge resilient and deformable sealing strips.

9. The door seal is a thin, arched, flexible strip which has at its edges anchoring means adapted to be inserted in undercut grooves. These anchoring means are in the form of arrowheads having a thin shank, a pointed nose to facilitate insertion in the grooves, and barbs or wings adapted to spread out in the grooves. The strip is thinnest at its center and gradually increases in thickness to the points where there are rounded abutment shoulders which lie directly adjacent to the necks supporting the barbs.

10. Claims 8 through 10 cover the combination of the flexible deformable sealing strip with its locking means.

11. Claims 14 through 16 and 19 cover the combination of the one piece grooved, arched supporting base with the arched flexible strip and the locking means.

12. Claim 21 omits the sealing strip.

13. The Patent Office did not have before it for consideration, at the time the patent application was being prosecuted, the Schanz Patent 1,998,791, granted April 23, 1935, which shows a sealing strip with the same arrowhead locking means as used in the patent in suit, nor the Kelly Patent 1,881,661, granted October 11, 1932, which shows the combination of a one piece, arched, extruded aluminum ribbed base threshold having a groove to support a resilient sealing member, nor the defendant's prior art ABC jalousie which is identical in all material respects with the Model B threshold charged to infringe; nor the Sevison Patent 2,329,791, granted September 21, 1943; the Krupp Patent 2,654,922, granted October 13, 1953; the India Rubber World, issue of April, 1946, and Modern Plastic, issue November, 1945, publications; and the Bakelite catalogs of 1949 and 1950, which disclose the use of vinyl plastic elastomers as weatherstripping similar to that used in the prior art ABC jalousie.

14. The Duraflex threshold itself as now manufactured under license does not embody the structure shown in the patent in suit. The abutment shoulder feature has been completely eliminated and the arched sealing strips merely bottom in the bottoms of the grooves in the base just as in the prior art. The patent's concept of sealing the screwholes by placing them under the arched sealing strip

874

has been abandoned in favor of a truly unitary structure which can be assembled at the factory.

15. No significant number of replacement strips have been sold even to distributors and there is no evidence of any having been sold to the ultimate consumer for replacement in the thresholds already installed.

16. The following prior art patents show "unitary" thresholds with flexible and deformable, arched sealing strips, which seal the underside of a door as does the vinyl strip in the Cornell Patent; Johnston Patent 104,321, granted June 14, 1870; St. Clair Patent 100,461, granted March 1, 1870; Gail Patent 2,-102,578, granted December 14, 1937; Petit Patent 794,424, granted July 11, 1905.

17. Schanz Patent 1,998,791 shows a sealing strip for closure members having an arrowhead locking means identical in all material respects with the arrowhead locking means of the patent in suit.

18. Kelly Patent 1,881,661 shows the combination of a one piece extruded metal threshold having a reinforcing rib and a groove to receive a resilient weatherstrip. The one piece metal support is arched in configuration and has floor engaging portions.

19. Defendant's own prior art ABC jalousies had a one piece metal support of a width substantially equal to the door or like opening; on one face thereof there were abutment surfaces to engage the face of the door or like opening. On the opposite face they had an undercut dovetailed groove opening which had opposed locking shoulder formations. There was an elongated resilient and deformable vinyl plastic sealing strip which had a longitudinally extending sealing portion or fin which was mounted on the dovetail portion of the strip which fitted into the dovetail groove on the one piece metal support. When the swinging glass jalousie closure member was moved to closed position it engaged the sealing fin and positively sealed the space between the sill and swinging closure member.

20. Vinyl plastic elastomers for use in place of rubber were not available prior to the end of World War II. They were shown in Modern Plastics for November 1945, and India Rubber World for April 1946, where it was suggested that they be utilized for weatherstripping. The vinyl weather strip was utilized by the defendant in its ABC jalousie as a sealing strip before the patentee of the patent in suit made his structure and more than one year before he filed the application for the patent in suit.

21. The general practice of making a sealing strip with a relatively thick supporting wall and a relatively thin, and hence more flexible, sealing portion is shown in Krupp Patent 2,654,922 and in Sevison Patent 2,329,791.

22. The arched sealing strip of the patent in suit is depressed by the door and bears up against it, giving a positive seal. It performs the same function as the arched sealing strip in St. Clair Patent 100,461; Johnston Patent 104,321; and Gail Patent 2,102,578.

23. The arrowhead anchoring means of the patent in suit which anchors the flexible strip against accidental displacement and facilitates insertion of the strip, performs the same function as the anchoring means in Schanz Patent 1,998,-791 which facilitated placing and removal of the strip. The thin neck of Cornell and the thin neck of Schanz permit the barbs to be pushed back during insertion of the arrowhead in the undercut groove. The pointed nose of Cornell and the pointed nose of Schanz both facilitate the initial insertion of the arrowhead in the undercut groove, and the barbs of Cornell and Schanz both open out to the undercut groove to hold the sealing strip in place. Broadly speaking, the anchoring means of Cornell and the anchoring means of both St. Clair Patent 100,461 and of Gail Patent 2,102,578 likewise perform the function of holding the strip removably in place.

24. The arched one piece, grooved and ribbed extruded aluminum base of Cornell serves only the same function as that

of Kelly Patent 1,881,661 or Petit Patent 794,424. In Cornell the base fits tightly to the floor, it is arched to facilitate the passage of wheelchairs and it is grooved to hold the resilient sealing strip. The Kelly base is likewise fitted tightly to the floor. It is arched and has a groove to receive and hold a resilient sealing strip. Petit is also an arched, grooved, one piece metal support. The supporting base of Cornell and of Gail Patent 2,-102,578 likewise performs substantially the same function.

25. The ribs in Cornell perform only the same function that they performed in the prior art. They serve in Cornell to strengthen and stiffen the structure. Likewise in Kelly Patent 1,881,661 they serve as stiffening members and in Petit Patent 794,424 the two ribs formed by the lobes of the groove serve as stiffening members and are hollow to receive the edges of the sealing strip. In Gail Patent 2,102,578 the hollow stiffening ribs also serve to receive the edges of the sealing strips. The undercut grooves are formed in these ribs.

26. The threshold in the patent in suit is merely an aggregation of old mechanical elements, each performing and producing the same function or operation that it performed in the prior art and the conjunction or concert of these elements does not produce anything which exceeds the sum of their individual old contributions, and does not either produce a new result or an old result in a more efficient and economical way. The differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertained.

27. It is conceded that claims 15, 16, 19, 21 and 23 of the patent, if valid, are infringed by Defendant's Model A threshold.

28. It is conceded that claim 14, if valid, is infringed by defendant's Commercial Model B threshold.

29. Claim 14 is not infringed by defendant's Model A threshold.

30. Claims 8, 9 and 10 of the patent in suit are not infringed by defendant's models.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter under 28 U.S.C. § 1338 and 35 U.S.C. § 281.

2. Claims 8, 9, 10, 14, 15, 16, 19, 21 and 23 of the Cornell patent in suit are invalid for lack of invention.

3. Plaintiff is not entitled to an injunction or damages.

4. Defendant is entitled to a judgment holding claims 8, 9, 10, 14, 15, 16, 19, 21 and 23 of the patent in suit invalid, together with its costs incurred in this suit, which judgment shall be submitted on notice.